UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES R. FREZZELL,

                            Plaintiff,

    -against-                                    1:14-CV-0729 (LEK/ATB)

NEW YORK STATE DEPARTMENT
OF LABOR, *et al.*,

                            Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff James R. Frezzell commenced this employment discrimination action against his former employer, New York State Department of Labor ("DOL"), as well as current and former DOL employees Sara Harms, Justin Heinbuch, Heather Romano, Margaret Sheehan-Nolan, John Triller, Marty Selleck, Symone Wango, and Robert Young. Dkt. Nos. 1 ("Complaint"), 25 ("Amended Complaint"). Plaintiff alleges unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the New York State Human Rights Law ("HRL"), N.Y. Exec. Law § 290 *et seq*. Am. Compl. ¶¶ 36–97. Presently before the Court is Defendants' motion for summary judgment. Dkt. Nos. 91 ("Motion"), 91-1 ("Statement of Material Facts"), 91-2 ("Memorandum"). For the reasons that follow, Defendants' Motion is granted.

## II. BACKGROUND

### A. Factual Background

The facts below are drawn primarily from Defendants' Statement of Material Facts. Local Rule 7.1 requires a party opposing a summary judgment motion to submit a response to the movant's statement of material facts, admitting or denying the movant's factual assertions. L.R. 7.1(a)(3). Each denial must include a specific citation to the record. Id. "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. Despite receiving an extension of time in which to respond to Defendants' Motion, Dkt. No. 94 ("May 2017 Order"), Plaintiff has not submitted any response and does not dispute any assertions in Defendants' Statement of Material Facts, Docket. Therefore, the Court deems all "properly supported facts set forth in the Statement of Material Facts" as admitted. L.R. 7.1(a)(3).

#### 1. Plaintiff's Employment at DOL

Plaintiff is an African American man. Am. Compl. ¶¶ 4, 37. From 2003 until July 28, 2014, Plaintiff was employed by DOL as a Local Veterans Employee Representative ("LVER") in the Albany Career Center. SMF ¶¶ 1–2. As an LVER, Plaintiff's primary responsibility was providing support services to veterans seeking employment and "referring them to jobs." Dkt. No. 91-34 ("Frezzell Transcript") at 23:23–25. Sara Harms was Plaintiff's supervisor from May 2012 until his departure in 2014. SMF ¶¶ 2, 4. John Triller managed the Albany Career Center and was Harms's supervisor. Id. ¶ 3. Plaintiff is the only employee who has ever complained to Triller that Harms used racially offensive language at work. Id. ¶ 23.

In August 2013, Plaintiff requested permission to attend an event called the African American Family Day. Am. Compl. ¶ 25; Frezzell Tr. at 156:12–157:12. DOL denied Plaintiff's request because the event did not focus on either jobs or veterans and, having participated in previous African American Family Days, DOL did not believe many veterans seeking employment would attend the event. SMF ¶ 46. Also in 2013, DOL implemented a new initiative which aimed to find employment for all Career Center veteran customers. Id. ¶¶ 51–52. As part of this initiative, DOL increased accountability and reporting requirements for offices charged with finding jobs for veterans, including the Albany Career Center. Id. ¶¶ 56–57. As a result, LVERs such as Plaintiff were subject to increased oversight and scrutiny, which caused multiple employees to tell Harms they felt "singl[ed] . . . out for scrutiny." Id. ¶¶ 58–59. The concerns were not specific to employees of a particular race or sex. Id. ¶ 60. Harms told these employees that she was more closely managing all staff members in order to meet the office's employment initiative goals. Id. ¶ 61.

Plaintiff's 2012, 2013, and 2014 performance evaluations reveal numerous concerns regarding his performance and professionalism at the Albany Career Center. For example, Plaintiff received an unsatisfactory rating for "Problem Solving/Decision Making" in his September 2012 evaluation, which described "[h]is decision to tell a customer he was another employee who no longer work[ed in the office]" as "poor judgment." Id. ¶ 48. The evaluation also noted that Plaintiff had "frequent unscheduled absences" and that he "resists supervision and direction, and can be argumentative and uncooperative." Id. A 2013 evaluation included similar concerns, stating that Plaintiff "needs to continue to give his supervisor advance notice when he wants time off," "sometimes openly challenges his supervisors' directive prior to making

suggested changes," and that he needed to "[c]ontinue working on quality OSOS data entry/SMART subscriptions and to work on developing a good rapport with his customers." Id. ¶ 49. Similar deficiencies were noted in subsequent evaluations. E.g., id. ¶¶ 65, 160. In the summer of 2013, Plaintiff regularly failed to provide mandated services to veteran customers, properly document services provided, or properly schedule follow-up services. Id. ¶ 67. He also "became increasingly resistant to requests that he correct mistakes and comply with program requirements." Id. On several occasions, Plaintiff reported completing activities that he had not in fact completed. E.g., id. ¶¶ 68–70, 149–50. In 2013 and 2014, he was "consistently late for work," id. ¶ 106, "increasingly disrespectful and disruptive in the office," id. ¶ 124, regularly failed to complete required tasks, e.g., id. ¶¶ 167–68, 194, and repeatedly refused to follow directions, id. ¶¶ 178–80. Harms documented numerous other concerns with Plaintiff's job performance in 2013 and 2014. E.g., id. ¶¶ 119–24, 136–40, 178–91. Plaintiff's employment was terminated on July 28, 2014. Id. ¶ 196.

Plaintiff alleges that Harms treated him unfairly because of his race and gender. Specifically, he claims that she "overly scrutinized [his] work," reprimanded him in front of coworkers "when white . . . coworkers were not subject to the same treatment," and gave him "the evil eye." Frezzell Tr. at 98:21–99:2. His claims are premised on alleged "racial slurs, derogatory comments and verbal abuse" by Harms and other DOL employees. Am. Compl. ¶ 17. Plaintiff also alleges that Defendants retaliated against him when he complained of discrimination. E.g., id. ¶ 27. The acts forming the basis of Plaintiff's claims are summarized below.

*2. The Birthday Card Incident*

In 2013, Harms purchased a birthday cake and card to celebrate the birthday of an African American employee who worked in the Albany Career Center. SMF ¶¶ 15–16. The card read, "For your birthday we couldn't get just any card . . . we needed one with a little more room." Id. ¶ 17 (alteration in original). The card featured a number of monkeys standing squished together on the front, then the card folded out, giving each monkey more room. Id. Harms selected the card because it was large enough to accommodate the estimated twenty-five short notes and signatures from each of the employees in her office. Id. ¶ 17. She circulated the card to her staff, which included multiple African American employees, and no one indicated that the card was inappropriate or offensive. Id. ¶ 20. Plaintiff signed the card and did not say that he found the card to be racist or insensitive. Id. ¶ 21. Plaintiff signed the card "D-Money 14 Enjoy James F." Id. ¶ 22.

*3. Mr. Wigger*

In June 2013, Plaintiff emailed Triller to request a meeting because another LVER named Gary Clark referred to a customer as "Mr. Wigger." Id. ¶ 25. Plaintiff's email stated, "I am requesting a meeting with Gary Clark and yourself regarding a comment voiced by Gary in reference to Mr. Wigger, JFV Appointment-6/3/13, and his name, rhyming with a derogatory and offensive word that is used to defame Afro-Americans." Id. Triller forwarded Plaintiff's email to DOL's Division of Equal Opportunity Development ("DEOD"), which is charged with investigating complaints of racial harassment and discrimination at DOL. Id. ¶ 8. DEOD instructed Triller to meet with Plaintiff to assess the facts of his complaint. Id. ¶ 26.

5

Upon investigation, Triller learned that the customer referred to as "Mr. Wigger" was in fact named Wigger. Id. ¶ 27. Triller brought Plaintiff's concern to Clark, who stated that he referred to the customer as "Mr. Wigger" because Wigger was his last name and did not intend any derogatory or offensive meaning. Id. When Triller met with Plaintiff and Clark to discuss the incident, Plaintiff admitted that he had not known that the customer's name was actually Wigger. Id. ¶ 28. Plaintiff said the situation was a misunderstanding and that he did not believe it was necessary to submit a complaint. Id. ¶ 29.

### 4. *The Black Hat Incident*

In December 2013, at the office holiday party, Harms gave a black Santa hat that said "bah humbug" to an employee named Diaz. Id. ¶ 30. Harms presented the hat because there was a running joke in the office that Diaz was the "office scrooge." Id. Diaz found the gift amusing and asked Harms if she had gotten the hat from her house, to which Harms responded that she did not have "black hats" in her house. Id. Plaintiff misheard Harms's comment and thought she had said she did not allow "black cats" in her house, meaning African American men. Id. ¶ 31; Frezzell Tr. 41:10–43:14. Plaintiff initially complained to coworkers that Harms had made a racist comment, but later conceded that he had misheard her and notified DEOD that he did not wish to file a complaint about the incident. SMF ¶¶ 36–37. DEOD nonetheless investigated Plaintiff's informal complaint and determined that Harms had not made any inappropriate comments at the holiday party and that Plaintiff had misheard her when she said "black hat." Id. ¶ 38.

### 5. *Sexual Harassment Allegation*

In October 2013, Plaintiff met a female DOL employee, Wango, at the Minority Women Business Enterprise event in Albany. Id. ¶¶ 197–98. Wango felt uncomfortable during her interaction with Plaintiff and filed a sexual harassment complaint against him with DEOD on October 10, 2013. Id. ¶¶ 200–01. Harms did not speak to Wango about her allegations before Wango filed her complaint. Id. ¶ 216. Additionally, when Wango made her complaint, she did not know that Harms was Plaintiff's supervisor or that he had made an Equal Employment Opportunity Commission ("EEOC") complaint against Harms and DOL. Id. ¶¶ 202, 205. Margaret Sheehan, the Interim Director of DEOD, investigated Wango's complaint, and, at the time of her investigation, was unaware that Plaintiff had filed an EEOC complaint against DOL personnel. Id. ¶¶ 207–08. Sheehan conducted a number of interviews as part of her investigation, id. ¶ 209, and ultimately concluded that the allegations against Plaintiff lacked merit, and no disciplinary action was taken against him as a result of Wango's complaint. Id. ¶¶ 211–13.

### B. Procedural Background

On June 28, 2013, Plaintiff filed a complaint with the EEOC, alleging that Defendants discriminated against him on the basis of race and gender. Am. Compl. ¶ 33 & Ex. A. Plaintiff filed similar complaints with the EEOC on February 7, 25, and 26, 2014, and March 3, 2014. Am. Compl. ¶ 33. The EEOC closed its file on Plaintiff's complaints on March 20, 2014, without making a finding of discrimination, and issued a right-to-sue letter. Id. ¶ 34 & Ex. B.

Plaintiff commenced this action on June 17, 2014 by filing a pro se complaint. Compl. On October 2, 2014, Defendants moved to dismiss the Complaint for failure to state a claim. Dkt. No. 16 ("Motion to Dismiss"). Though he initially failed to respond to the Motion to Dismiss,

Plaintiff notified the Court that he had obtained counsel on October 27, 2014. Dkt. No. 17. After receiving an extension of time in which to respond to the Motion to Dismiss, Dkt. No. 19, Plaintiff's attorney submitted an opposition to the Motion to Dismiss, Dkt. No. 21, and moved to amend the Complaint, Dkt. No. 20. On November 13, 2014, Defendants withdrew their Motion to Dismiss and consented to Plaintiff's request to amend the Complaint. Dkt. No. 23. Defendants answered the Amended Complaint on December 31, 2014. Dkt. No. 26 ("Answer").

On January 20, 2015, Plaintiff's attorney withdrew as counsel of record "due to an irretrievable break down of the attorney-client relationship." Dkt. No. 28 ("Withdrawal Motion"). Plaintiff has been unable to obtain a new attorney and has proceeded pro se since January 2015. Dkt. No. 30 ("Status Report").

On July 7, 2015, the individual defendants moved to dismiss the Amended Complaint for lack of personal jurisdiction, Dkt. No. 36 ("Second Motion to Dismiss"), which the Court denied on February 24, 2016, Dkt. No. 51 ("February 2016 Order"). Defendants moved for summary judgment on May 12, 2017. Mot. The Court granted Plaintiff an extension of time in which to respond to the Motion on May 26. May 2017 Order. Instead of submitting a response, however, Plaintiff moved for the appointment of counsel on July 12, Dkt. No. 95, which the Honorable Andrew T. Baxter, U.S. Magistrate Judge, denied, Dkt. No. 96. The Court affirmed Judge Baxter's denial of Plaintiff's request on August 22. Dkt. No. 103.

Plaintiff has not responded to Defendants' Motion and has not submitted a counterstatement of material facts. Docket.

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736,

742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to identifying genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

### A. Title VII Claims

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In an employment discrimination action, the plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–10 (1993). This initial burden is "minimal." Id. at 506.

Defendants are entitled to summary judgment on Plaintiff's Title VII claims because Plaintiff has wholly "fail[ed] to come forward with evidence to support *prima facie* cases of discrimination, retaliation or a hostile work environment." Shah v. Helen Hayes Hosp., 252 F. App'x 364, 367 (2d Cir. 2007); accord Wright v. City of Syracuse, No. 10-CV-661, 2014 WL 1293527, at *21 (N.D.N.Y. Mar. 31, 2014), aff'd, 611 F. App'x 8 (2d Cir. 2015) (holding that defendants were entitled to summary judgment where plaintiff "fail[ed] to identify any evidence" to support Title VII claims). For that reason alone, the Amended Complaint should be dismissed. However, even reviewing the record on Plaintiff's behalf, the Court cannot identify any evidence that would allow a reasonable jury to conclude that Defendants violated Title VII.

*1. Disparate Treatment Claim*

In order to set forth a prima facie case of disparate treatment in violation of Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination." Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Once the plaintiff satisfies her initial burden, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the defendant provides a legitimate, nondiscriminatory reason for the action, "the presumption raised by the prima facie case is rebutted and drops from the case." St. Mary's, 509 U.S. at 507 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981)). If a defendant successfully rebuts the prima facie case, the plaintiff can escape summary judgment if she presents evidence that the defendant's explanation is pretext for discrimination. Reeves, 530 U.S. at 143 (citing Burdine, 450 U.S. at 255). Plaintiff cannot establish a prima facie case of disparate treatment because there is no evidence to support an inference of discrimination on the basis of race or gender.

Plaintiff alleges that Harms treated him unfairly because of his race and gender. Specifically, he claims that she "overly scrutinized [his] work," reprimanded him in front of coworkers "when white . . . coworkers were not subject to the same treatment," and gave him "the evil eye," Frezzell Tr. at 98:21–99:2. Plaintiff offers no evidence beyond his own suspicion that he was terminated because of his race or gender. There is no indication in the record that Harms or any other DOL employee ever made insulting or inappropriate comments regarding

11

Plaintiff's race or gender. Nor is there any evidence that similarly situated Caucasian or female employees were treated more favorably than Plaintiff. His "'[feelings and perceptions] of being discriminated against [are] not evidence' of discrimination." Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999) (alterations in original) (quoting Fisher v. Vassar Coll., 70 F.3d 1420, 1439 (2d Cir. 1995)); see also Nguyen v. Dep't of Corr. & Cmty. Servs., 169 F. Supp. 3d 375, 390 (S.D.N.Y. 2016) (noting that "bare suspicions of discrimination in the absence of any supporting evidence will not suffice" to support an inference of discrimination); Williams v. All. Nat'l Inc., No. 98-CV-7984, 2001 WL 274107, at *5 (S.D.N.Y. Mar. 19, 2001), aff'd, 24 F. App'x. 50 (2d Cir. 2001) ("[A plaintiff's] beliefs cannot replace the 'admissible evidence' required to permit an inference of discrimination and survive summary judgment." (quoting Campbell v. All. Nat'l Inc., 107 F. Supp. 2d 234, 244 (S.D.N.Y. 2000))).

One of Plaintiff's key complaints is that he was disciplined more harshly than Caucasian employees. E.g., Am. Compl. ¶ 22. At his deposition, Plaintiff was asked to describe a time when a Caucasian coworker engaged in the sort of misconduct for which he was disciplined, but was treated more favorably. Frezzell Tr. at 99:12–14. He could not recall any such instances. Id. at 99:17. Similarly, Plaintiff acknowledged that he had never seen his coworkers' performance evaluations, id. at 100:24–101:2, and so he would have no idea whether Caucasian employees were disciplined differently. The Court has reviewed the record and found no indication that Plaintiff was disciplined more harshly than similarly situated Caucasian employees, or otherwise treated unfavorably.[1]

---

[1] Plaintiff's causes of action include claims for gender discrimination, e.g., Am. Compl. ¶ 37, but the Amended Complaint does not allege any facts suggesting Plaintiff was discriminated against because he is male. Nor does the record support such a conclusion. When

12

Because Plaintiff cannot establish a prima facie case of disparate treatment under Title VII, Defendants are entitled to summary judgment on this claim.

### 2. Retaliation Claim

To establish a prima facie case of retaliation, a plaintiff must show "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (citing Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 205–06 (2d Cir. 2006)). To violate Title VII's antiretaliation provision, an employer's actions must be "materially adverse," which "means [they] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–68 (2006)). Plaintiff has not presented sufficient evidence to meet this burden.

Plaintiff claims that Wango's sexual harassment complaint against him was "a put-up job . . . part of this continuing harassment and discrimination" and that "someone told her that [she] should file the complaint against [Plaintiff], even though it was baseless and it was out of the clear-blue sky." Frezzell Tr. at 81:14–22. He admitted that he had no proof that anyone told her to file the complaint. Id. at 82:6–9. Indeed, Plaintiff's allegation is contradicted by the record. SMF ¶¶ 202–08. Moreover, Plaintiff did not suffer any adverse employment action as a result of

---

asked to recall any instance of discrimination or harassment based on his gender, Plaintiff could identify none. Frezzell Tr. at 67:19–23.

the investigation. As noted above, the investigation found that Plaintiff had not harassed Wango and he was never disciplined for sexually harassing anyone at work. Frezzell Tr. at 97:20–24.

Plaintiff's termination, however, does constitute an adverse employment action and could support a retaliation claim. E.g., Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). Even assuming Plaintiff presented evidence to make a prima facie showing of retaliation, DOL has clearly established it had legitimate, non-retaliatory reasons to terminate his employment. Plaintiff's performance evaluations from 2012 through 2014 reveal consistent serious concerns regarding his performance and professionalism. E.g., SMF ¶¶ 48–49, 68–70, 119–24, 136–40, 149–50, 178–91. Plaintiff does not dispute that he had "frequent unscheduled absences," "resist[ed] supervision and direction," "[could] be argumentative and uncooperative," lacked "good rapport with his customers," and exhibited "poor judgment." Id. ¶¶ 48–49. Nor does he dispute that regularly failed to complete required tasks, id. ¶ 167–68, reported completing activities that he had not in fact completed, id. ¶¶ 68–70, 149–50, and was "consistently late for work," id. ¶ 106, and "disrespectful and disruptive in the office," id. ¶ 124. In light of these serious job performance deficiencies, Plaintiff's termination was plainly justified.

Plaintiff also argues that Harms gave him negative performance reviews in retaliation for filing his EEOC complaint and raising concerns regarding alleged discrimination. Am. Compl. ¶¶ 46–49. While a plaintiff may indirectly show causation by showing temporal proximity between the protected activity and the adverse act, Colandrea v. Hunter-Tannersville Cent. Sch. Dist., No. 15-CV-456, 2017 WL 1082439, at *11 (N.D.N.Y. Mar. 22, 2017) (Kahn, J.), the evidence does not support an inference of causation here. The record reveals that Plaintiff had numerous negative performance evaluations as early as September 2012, SMF ¶ 48,

14

approximately nine months before Plaintiff filed his first complaint with the EEOC, Am. Compl. ¶ 33. Because Harms's criticisms were consistent before and after Plaintiff filed his first EEOC complaint, "no reasonable jury could conclude that [its later scrutiny was] motivated by retaliatory animus arising from" Plaintiff's protected activity. Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 72 (2d Cir. 2015); accord Weinstock v. Columbia Univ., 224 F.3d 33, 45 (2d Cir. 2000) ("The consistency of the viewpoint expressed . . . further supports [the defendant's] proffered nondiscriminatory reason for [the employment action]."); Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 456 (S.D.N.Y. 2013), aff'd sub nom. Dabney v. Bed Bath & Beyond, 588 F. App'x 15 (2d Cir. 2014) ("Although temporal proximity can sometimes demonstrate a causal nexus, where (as here) the [employment action] was ultimately the product 'of an extensive period of progressive discipline' that began . . . three months before the [protected act], a claim for retaliation cannot be maintained."). Moreover, Harms was not even aware of Plaintiff's EEOC complaints until he commenced this action, further weakening the causal connection between these complaints and her reviews of Plaintiff. SMF ¶¶ 217–18.

Finally, even if Defendants did not have a legitimate, non-discriminatory reason to terminate Plaintiff, the retaliation claim would still be subject to dismissal because he offers "no circumstantial evidence that [he] was treated differently from any similarly-situated employee[] [and] there is no direct evidence of retaliatory animus." Richards-Byers v. N.Y.C. Dep't of Fin., 449 F. App'x 55, 57 (2d Cir. 2011). To create an inference of race discrimination, a plaintiff "must compare herself to employees who are 'similarly situated in all material respects.'" Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999) (quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)). Plaintiff offers no evidence to provide

"any factual basis from which one could infer that any [non-African American] employee similarly situated to [him] was subject to differential treatment." Henry v. N.Y.C. Health & Hosp. Corp., 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014). Because Plaintiff has not presented sufficient evidence to make out a prima facie case of retaliation, Defendants are entitled to summary judgment on this claim.

### 3. *Hostile Work Environment Claim*

"In order to establish a claim of hostile work environment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Demoret, 451 F.3d at 149 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). A plaintiff must show "that the environment was objectively hostile and abusive," not merely that plaintiff perceived the environment to be abusive. Id. (citing Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003)). Isolated incidents generally do not amount to a hostile work environment "unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" Id. (quoting Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004)). Typically, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id. (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)).

To analyze a hostile work environment claim, a court must "look to the record as a whole and assess the totality of the circumstances, considering a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

16

employee's work performance,' [and] the extent to which the conduct occurred because of plaintiffs' [protected status]." Id. (citation omitted) (quoting Harris, 510 U.S. at 23).

Plaintiff alleges that he was "continually subjected to racial slurs, derogatory comments and verbal abuse by Harms, a Caucasian female supervisor[,] . . . and other DOL employees, that were made to [Plaintiff] and in reference to [his] African-American race." Am. Compl. ¶ 17. It is unclear what racial slurs Plaintiff is referencing in his Amended Complaint because he has identified no admissible evidence to support this allegation. At his deposition, Plaintiff was unable to recall a single instance when Harms used a racial slur in his presence. Frezzell Tr. at 41:8–48:12, 65:24–66:4.

Plaintiff's claim that Harms created a hostile work environment by "giving [him] the evil eye, overly scrutinizing [his] work," and "reprimanding [him] in front of the—in front of the other people," Frezzell Tr. 98:22–99:2, fails as a matter of law. Absent extreme circumstances, job performance criticism does not create a hostile work environment. See Marcus v. Barilla Am. N.Y. Inc., 14 F. Supp. 3d 108, 113 (W.D.N.Y. 2014) ("[A] series of sporadic, isolated incidents in which managers verbally disagreed with plaintiff or criticized her job performance . . . falls well short, as a matter of law, of describing discriminatory conduct that is objectively threatening, intimidating, humiliating or harassing."); Williams v. New York City Hous. Auth., No. 12-CV-825, 2013 WL 12080915, at *7 (E.D.N.Y. Aug. 7, 2013) (holding that issuance of instructional and counseling memoranda does not create a hostile work environment). "[M]ere criticism of an employee's work . . . does not fall within the ambit of Title VII unless [the supervisor's] conduct is so severe, pervasive, offensive and 'permeated with discriminatory intimidation' as to alter the terms and conditions of his subordinate's employment." Marcus, 14

17

F. Supp. 3d at 114 (quoting Harris, 510 U.S. at 21). The record contains no indication that Harms's criticisms were "so severe" or "permeated with discriminatory intimidation," id., so as to constitute harassment.

To the extent Plaintiff relies on the birthday card, black hat, and Mr. Wigger incidents, none of these would allow a reasonable jury to conclude that he was subjected to a hostile work environment because they do not reveal an environment that is "objectively hostile and abusive." Demoret, 451 F.3d at 149. These isolated incidents are not "'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" Id. Cf. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 120 (2002) (affirming denial of summary judgment where plaintiff "presented evidence from a number of other employees that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets"). It is worth noting that in two of these three incidents, the uncontested evidence reveals that Plaintiff's subjective perception of racism was the result of his own misunderstanding. SMF ¶¶ 29, 36–37.

Based on the above, Defendants are entitled to summary judgment on Plaintiff's unsupported hostile work environment allegations.

**B. Section 1981 and HRL Claims**

Plaintiff also brings claims under § 1981 and the HRL. Am. Compl. ¶¶ 50–97. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." § 1981(a). "This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson v. Cnty. of Oneida,

375 F.3d 206, 224 (2d Cir.2004). The same "core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 45 (2d Cir. 2015) (quoting Patterson, 375 F.3d at 225). The HRL prohibits "an employer . . because of an individual's . . . race [or] sex . . . [from] discriminat[ing] against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1).

Claims under § 1981 and the HRL are analyzed under the McDonnell Douglas framework. See Johnson v. Andy Frain Servs., Inc., 638 F. App'x 68, 70 (2d Cir. 2016) ("Discrimination claims under Title VII[,] . . . § 1981, and the [HRL] are analyzed under the burden-shifting framework in McDonnell Douglas."); see also Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006) ("Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII."). Therefore, Defendants are entitled to summary judgment on Plaintiff's § 1981 and HRL claims for the same reasons the Title VII claims fail.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 91) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 25) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**DATED:**　　November 02, 2017
　　　　　　　Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge